37 C.C.P.A.(Patents)

In re KUHN.

Patent Appeals No. 5678.

United States Court of Customs and Patent Appeals.

June 30, 1950.

John G. Sbarbaro, Washington, D. C. (G. H. Strickland and R. R. Candor, Dayton, Ohio, of counsel), for appellant.

E. L. Reynolds, Washington, D. C., for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Judges.

JOHNSON, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the rejection by the Primary Examiner of claims 14, 15, 16, and 17 in appellant's reissue application for a patent for new and useful improvements in "Fluid Treating Apparatus," on the ground of laches, and the rejection of Claim 16 on prior art as well. The original patent claims, 1 to 13, inclusive, were allowed.

Appellant's original application was filed on September 20, 1937, and matured into patent No. 2,275,444, dated March 10, 1942. The reissue application here involved was filed on June 14, 1943, which is over 15 months after the grant of the original patent to appellant.

In his brief and in oral argument, counsel for appellant conceded that the application here involved is for "a broadened reissue of the Kuhn patent No. 2,275,444." The board correctly held that appellant had exercised due diligence in preparing and filing the reissue application after the discovery that the claims of the Kuhn patent No. 2,275,444 were too limited in scope, but held that the fourteen month period which elapsed between the issuance of the patent and that discovery is an unreasonable delay.

The questions here presented are whether claims 14 to 17 of the reissue application were properly rejected on the ground of laches and whether claim 16 was properly rejected on prior art.

From the record it appears that appellant's patent was issued on March 10, 1942; that on April 8, 1942 (less than one month thereafter) appellant assigned "approximately twelve patents or applications" for patents of appellant, including the patent here involved, to General Motors Corporation; that immediately thereafter General Motors Corporation entrusted its attorney with the prosecution and study of the patents and applications so assigned; that the immediate necessity of filing certain divisional applications, and the prosecution of the newly acquired pending applications demanded the attorney's concentrated attention for "a substantial period of time thereafter, so that the question of the reissue of patent 2,275,444 could not be considered and *was not realized to be necessary at that time*" [Italics added]; that during the week of May 3, 1943 (over 13 months after the patent issued) said attorney's "attention was called to apparatus" which he was informed contained the structure defined in the involved claims 14 through 17 and which "was apparently not dominated by the claims of patent 2,275,444"; that it was not until the week of May 3, 1943, that the said attorney "realized that the said patent was not commensurate with the invention."

There is nothing in the record to show how many patents or how many applications were involved in the assignment to General Motors Corporation. The record does not show how many divisional applications were filed or how many pending applications were prosecuted. Nor does the record disclose how long a time is meant by "a substantial period of time thereafter." However the record does show that the question of reissue of patent No. 2,275,444 was not considered and was not realized to be necessary; that the discovery that patent 2,275,444 "was not commensurate with the invention therein disclosed" was not made through any examination or by reason of any effort or action of appellant, or the

General Motors Corporation, or the attorney for General Motors Corporation, but was only *discovered* during the week of May 3, 1942, when the General Motors Corporation's attorney's "attention was called to apparatus" which the attorney "was informed, contained the structure now defined in present claims 14 through 17."

Ordinary prudence would require an assignee to inspect the application and the patent to determine its scope and sufficiency before purchasing the patent. It must be presumed that General Motors Corporation made an inspection of the application and the patent here involved before purchasing it and that such inspection did not suggest the desirability of filing a reissue application.

There is no statutory requirement limiting the time within which a broadened reissue of a patent may be sought. By analogy to the statutory bar of public use, failure to file for a reissue within two years of the grant of a patent the application for which was filed prior to August 5, 1940, or within one year where the patent sought to be reissued was granted on an application filed subsequent to August 5, 1940, may be considered as an abandonment to the public of matter disclosed but not claimed in a patent.

The case of In re Croskey et al., 165 F.2d 797, 798, 35 C.C.P.A., Patents, 864, cited by appellant in support of his contention that he should be excused for his attorney's failure to realize the narrowness of the Kuhn patent, and that his delay is as excusable as the delay in the Croskey case, is not in point. In that case there was no issue raised relating to the question of diligence in the filing of the reissue application, as shown by the court's statement, as follows: "In the solicitor's brief it is stated that 'It does not appear to be urged by the appellants that their excuse for the delay is sufficient, if the critical period is one year, and it has not been asserted by the Patent Office that the excuse is insufficient if the critical period is two years.'"

The Croskey case, supra, simply held that there is no statutory requirement limiting the time within which a broadened reissue of a patent must be sought; that the rule against laches in filing of an application for reissue of a patent was drawn by the courts by analogy to the time interval of the public use bar, as clearly pointed out in the case of Miller v. Bridgeport Brass Co., 104 U.S. 350, 352, 26 L.Ed. 783, wherein the Court stated: "If two years' public enjoyment of an invention with the consent and allowance of the inventor is evidence of abandonment, and a bar to an application for a patent, a public disclaimer in the patent itself should be construed equally favorable to the public. Nothing but a clear mistake, or inadvertence, and a speedy application for its correction, is admissible when it is sought merely to enlarge the claim," and that where a reissue is sought for the purpose of enlarging the scope of a patent, the rule of laches should be strictly applied.

This court in the case of In re Seabury, 108 F.2d 232, 27 C.C.P.A., Patents, 777, affirmed the proposition that where a reissue application is filed within two years of the issuance of a patent, the patentee has no absolute right to a reissue presenting broader claims where he is wanting in diligence and promptness in filing the reissue application. No fixed rule can be laid down as to what constitutes an unreasonable delay. Where the reissue is sought for the purpose of enlarging claims, the only mistake suggested being that they are not broad enough, the reissue application should be made within a reasonably short period after the original patent was granted or the patentee will lose his right to a reissue. H. W. Roos Co. v. McMillan, 6 Cir., 1933, 64 F. 2d 568, 17 U.S.Pat.Q. 191, certiorari denied, 290 U.S. 684, 54 S.Ct. 121, 78 L.Ed. 589.

An inspection by the patentee or by the assignee of his patent at any time after it issued would have disclosed the mistake which is claimed to have been made. See In re Hayes, 178 F.2d 940, 37 C.C.P.A. Patents 806. And whether they did not inspect it and thus did not discover the mistake, or did inspect it and failed to file a reissue application, they were guilty of negligence effecting an unreasonable delay. There is no evidence that either the patentee

or the assignee inspected either the claims or the specification of the patent at any time after the patent issued until the week of May 3, 1942 (more than 13 months after the patent issued) when the assignee's attorney was shown an apparatus by some one, not identified in the record, that contained the structure now said to be defined in present claims 14 through 17, and which was apparently not dominated by the claims of patent No. 2,275,444.

In Wollensak v. Reiher, 115 U.S. 96, 99, 5 S.Ct. 1137, 1139, 29 L.Ed. 350, the Supreme Court said: "It follows from this that if, at the date of the issue of the original patent, the patentee had been conscious of the nature and extent of his invention, an inspection of the patent, when issued, and an examination of its terms, made with that reasonable degree of care which is habitual to and expected of men in the management of their own interests, in the ordinary affairs of life, would have immediately informed him that the patent had failed fully to cover the area of his invention. And this must be deemed to be notice to him of the fact, for the law imputes knowledge when opportunity and interest, combined with reasonable care, would necessarily impart it."

In the case of Crosley Corp. v. Westinghouse, D.C., W.D.Pa.1944, 52 F.Supp. 884, 901, 59 U.S.P.Q. 466, 482, modified on other grounds, 3 Cir., 152 F.2d 895, certiorari denied 317 U.S. 681, 63 S.Ct. 202, 87 L.Ed. 546, the court, in finding a reissue applicant guilty of laches where the reissue application was filed in less than two years after the date the original patent issued, said: "In other words, patentee and counsel had slept until advancing practice had awakened them. Slumber so disturbed furnishes no basis for new claims by which advancing art may be halted."

In the instant case it appears that the patentee, and the assignee General Motors Corporation, had "slept" until the attention of counsel for General Motors Corporation was called to apparatus which the attorney was informed contained the structure now defined in the appealed claims, and which "was apparently not dominated by the claims of patent 2,275,444." Appellant's action in laying the patent aside for more than thirteen months after its issue without making any attempt to determine whether or not a reissue was desirable, does not constitute that degree of diligence which is required in order to secure a reissue patent with broadened claims.

As this conclusion disposes of the entire application, we need not consider the rejection of claim 16 on prior art. For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.